**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HECTOR PLATA**                                    **CIVIL ACTION NO. 12-cv-1793**

**VERSUS**                                          **SECTION "C"**

**TRITON DIVING SERVICES**
**LLC, ET AL**                                      **HON. HELEN BERRIGAN**
                                                    *Pertains to 14-0131*

**Order and Reasons**

Before the Court is defendant, CRC Insurance Services, Inc.'s ("CRC") Motion for

Summary Judgment. Rec. Doc. 93. Plaintiff, Shore Construction, LLC ("Shore") opposes CRC's

motion. Rec. Doc. 112. The motion is before the Court on the briefs and without oral argument.

Having considered the memoranda of counsel, the record, facts, and applicable law, the Court

GRANTS CRC's Motion for Summary Judgment for the following reasons.

**I.       Factual background**

This diversity action arises out of the alleged breach of business relationship and/or

contract between the plaintiff, Shore, and the defendants, Risk Management Underwriters, Inc.

("Risk Management"), Midwest Insurance Agency, LLC ("Midwest") and CRC.

1

Shore is a business that supplies labor to customers for the performance of work within the marine industry. Rec. Doc. 105-4 at 2. On June 15, 2009, Shore and Conrad Industries ("Conrad") entered into a Master Service Agreement ("MSA"). Per the MSA, Shore was to provide its employees to Conrad to work for Conrad and its customers at Conrad's shipyard and to indemnify Conrad against liability from accidents resulting from such work. Rec. Doc. 1-1 at 4; Rec. Doc. 93-2 at 4. Shore alleges that in May 2010, two years after it began its business of supplying labor in the marine industry, it contracted with Risk Management to procure insurance on its behalf that would fully indemnify it for its business activities. Rec. Doc. 105-4 at 2. Risk Management then enlisted Midwest and CRC to assist it in procuring insurance for Shore. *Id*. Shore alleges that it dealt directly with Risk Management and Midwest, and that Risk Management then enlisted Midwest and CRC to assist it in procuring insurance for Shore. *Id*. Shore states that it provided Risk Management and Midwest with the MSA between Shore and Conrad to ensure that the insurance policy would cover its business risks. Rec. Doc. 1-1 at 3. Shore also claims that it supplied Risk Management and Midwest with the following description of its work:

> [Shore] supplies our employees to our clients to perform specific job tasks within the oil and marine industry. These tasks include welding, fitting, rigging, helpers, and burners to work on platforms, jackets, skids, modules, ships, tugs, boats, barges, etc…

Rec. Doc. 1-1 at 4. Defendants ultimately procured a Colony Insurance Company Commercial Policy with policy number AR5360905 with effective dates of June 1, 2010 to June 1, 2011 for Shore. Rec. Doc. 93-3. The policy included several dozen forms, including a Maritime Operations Exclusion and Watercraft Amendment. Rec. Doc. 93-3 at 11.[1]

---

[1] The copy of the policy attached to the Motion for Summary Judgment references the "Maritime Operations Exclusion" in its "Schedule of Forms and Endorsements," but does not include the form itself. Rec. Doc. 93-3.

Subsequently, Shore's employee, Hector Plata, was injured on or about September 20, 2010, while working at Conrad's Shipyard. Rec. Doc. 134 at 3. Colony denied Shore coverage for Plata's injuries on December 20, 2012. Rec. Doc. 93-7. As a result, Shore states that it was required to defend Conrad and Triton Diving Services, LLC at its own cost in Mr. Plata's lawsuit against them, and also pay the costs of a private settlement. Rec. Doc. 1-1 at 4-5. Shore also claims that since then, a second employee, Francisco Villareal, has filed suit for injuries sustained while working for Conrad, and Shore expects that Colony will likewise deny coverage, requiring Shore to shoulder further costs. Rec. Doc. 1-1 at 5.

On December 6, 2013, Shore filed this action in state court alleging 1) professional negligence and breach of fiduciary duties and 2) negligent misrepresentation, and seeking reimbursement for all damages in the Plata and Villareal civil actions as well as all expenses incurred in defending those actions and prosecuting this action. Rec. Doc. 105-4 at 2-3. The action was subsequently removed to this Court. Rec. Doc. 1. On November 25, 2014, CRC filed this motion.

## II.    Standard of review

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together

3

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324. "[U]nsubstantiated assertions" and "conclusory allegations" will not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III.     Law and Analysis

CRC urges that the Court should dismiss Shore's claims against it on several grounds: 1) that the one-year peremptive period for actions against insurance agents has passed; 2) that it did not owe a duty to advise Shore about the desirability of its coverage because it had no relationship with Shore; 3) that as an insurance wholesale broker, it owed no fiduciary duty to Shore because it did not communicate directly with Shore; and 4) that it made no negligent representations to Shore. Rec. Doc. 93-1. The Court will discuss the arguments below.

### a.   Peremption

CRC argues that under Louisiana law, actions against insurance agents are perempted after one year. La. R.S. §9:5606(A) provides:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Shore responds that CRC's conduct must be evaluated under Illinois law because "all of the communications, agreements, actions, and services that CRC supplied occurred in Illinois, and only between CRC and Midwest." Rec. Doc. 112 at 3. In reply, CRC asserts that even if Illinois substantive law were to apply, Louisiana's liberative prescription and peremption rules still govern. Rec. Doc. 119 at 3. The Court agrees.

Louisiana's choice of law rules dictate whether the law of Louisiana or Illinois applies in this action. *See Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001) ("A federal court considering a diversity case that implicates choice of laws must determine which state's law applies by following the choice of law rules of the forum state.") Louisiana Civil Code article 3549 governs choice of law issues regarding liberative prescription and peremption. Article 3549 provides that "when the substantive law of this state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies." It further provides that "when the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state

applies." Thus, Louisiana's prescription and peremption law applies regardless of whether Louisiana or Illinois substantive law governs the merits of the action.

The Court next addresses when the one year peremption period began to run. CRC maintains that that the period began when the policy was issued in 2010. Rec. Doc. 93-1 at 5. Shore asserts that the period began on December 20, 2012 when Colony denied coverage to Shore. Rec. Doc. 112 at 3. Under Louisiana law, prescriptive and peremptive periods commence with the plaintiff's actual or constructive knowledge of facts indicating entitlement to bring suit. *Campo v. Correa*, 828 So.2d 502, 510 (La. 2002). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for knowledge." *Id*.

CRC cites to *Dobson v. Allstate Ins. Co.*, Civ. A. 06-0252, 2006 WL 2078423 (E.D. La. July 21, 2006) for the proposition that because insureds are under a duty to read their policies and know the provisions, that Shore was put on constrictive notice when the policy was issued in 2010. Rec. Doc. 93-1 at 4-5. However, Louisiana's state supreme court has held otherwise. In *Roger v. Dufrene*, the state supreme court found that the insured became aware of an alleged failure to provide coverage when it filed a memorandum in opposition to motion for summary judgment that referred to deposition testimony from its insurance agent. 613 So.2d 947, 950 (La. 1993). Moreover, federal district courts have held that peremption periods for insurance actions begin to run not when the policy is put in place, but rather after an insured has suffered damage and the insurer has refused to pay on a claim. *See, e.g.*, *Ancar v. Lexingon Ins. Co.*, Civ. A. 06-8499, 2007 WL 97158, *3 (E.D. La. Jan. 10, 2007) (Peremptive period began "when [plaintiff's] home was destroyed by Hurricane Katrina on August 29, 2004, and Lexington subsequently refused to pay his claim."); *Belmont Commons, L.L.C. v. Axis Surplus Ins. Co.*, Civ. A. 06-6789, 2007 WL 2751202, *5 (E.D. La. Sept. 19, 2007) ("[T]he Court finds it reasonable that the

plaintiffs would be unaware of any gaps in coverage until such gaps were brought to its attention by the Adjuster for Axis only after the hurricane damage was incurred.").

In addition, the Court finds that *Dobson* does not mandate that the peremptive period began when the insurance policy was issued. In *Dobson*, the court found that the plaintiff "could reasonably have discovered the terms of her insurance policy in the 16 years since 1989," without holding that she was put on notice at the time that the insurance policy was first issued. *Dobson*, 2006 WL at *7. Moreover, *Dobson*'s holding to dismiss the case is distinguishable because the court held that her claim had prescribed under article 3492, the predecessor to §9:5606, because she had suffered an injury at the time that her agent had procured her policy. *Id*. Article 3492 provides that the prescriptive period for delictual actions run from the day the injury or damage was sustained, not from the date of actual or constructive notice. La. Civ. C. Art. 3492. After consideration of the case law on this issue, the Court Court finds that Shore did not have notice of the gap in coverage until its claim was denied on December 20, 2012, and thus the action was timely filed. Accordingly, the Court will not dismiss the action on this ground.

### b. Liability of wholesale broker

CRC argues that under Louisiana law, CRC cannot be held liable to Shore because as a wholesale broker, it never communicated directly with Shore. Rec. Doc. 93-1 at 7. Shore responds that Illinois law, and not Louisiana law, applies for its claims of breach of fiduciary duty and negligent misrepresentation. Rec. Doc. 112 at 4. The court disagrees and finds that Louisiana's substantive law applies. It is well-settled that "[a] federal court considering a diversity case that implicates choice of laws must determine which state's law applies by following the choice of law rules of the forum state." *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001) (citing *Eric R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Louisiana's

choice of law rules provide that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its laws were not applied to that issue." La. Civ. C. Art. 3515. To determine which state's policies would be most seriously impaired, the court looks to:

1) The relationship of each state to the parties and the dispute; and
2) The policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id*. This Court has previously held that Louisiana has a significant public policy interest in regulating its insurance industry. *McDermott Intern. Inc. v. Industrial Risk Insurers*, Civ. A. 01-3027, 2002 WL 1204924, *4 (E.D. La. June 3, 2002). This is equally true of the provisioning of labor to the maritime industry, and ensuring that employees and businesses in this arena are adequately insured. Although the defendants are foreign corporations and limited liability companies, Shore is a Louisiana limited liability company. Rec. Doc. 1-1 at 2. Moreover, the insurance policy provided coverage for business activities taking place in Louisiana. Rec. Doc. 93-2; Rec. Doc. 1 at 2. Thus, the Court finds that Louisiana's public policy would be most seriously impaired if its laws were not applied to Shore's claims.

Having concluded that Louisiana substantive law applies to the instant action, the Court will now address whether CRC owed a fiduciary duty to Shore. Various sections of this court have considered the question of whether wholesale brokers owe a duty to insureds and concluded that because wholesale brokers do not communicate with insurance customers, there is no possibility of recovery against them under Louisiana state law. *See Bowman v. Lexington Ins. Co.*, Civ. A. 06-9091, 2006 WL 3733839 (E.D. La. Dec. 14, 2006) (finding that a wholesale broker that has no contact with customers met its burden in proving that plaintiffs had no

possibility of recovery for negligent representation against it under Louisiana state law); *Frischhertz v. Lexington Ins. Co.*, Civ. A. 06-5676, 2006 WL 3228385 (E.D. La. Nov. 3, 2006) (dismissing claims against wholesale broker); *Nguyen v. Scottsdale Ins. Co.*, Civ. A. 2007 WL 647307, *2 ("because wholesale brokers do not communicate with insurance customers, plaintiffs have no possibility of recovery against them under Louisiana state law"). Like the defendant in *Bowman*, CRC has provided a sworn declaration averring that CRC is a wholesale broker and had no direct contact with the insured, instead acting solely as an "intermediary between the retail agent, Midwest, and the insurer, Colony National Insurance Comopany." Rec. Doc. 93-4. Shore does not argue that CRC is not a wholesale broker or that it had direct communication with CRC at any time. The Court thus concludes that Shore has no possibility of recovery against CRC. Accordingly, Shore's claims against CRC are dismissed.

Having dismissed Shore's claims against CRC, the Court does not reach CRC's arguments regarding whether insurance agents have a duty to advise insureds regarding desirability of coverage and whether CRC can be found liable for negligent misrepresentation in the absence of any direct representations to Shore. Rec. Doc. 93-1 at 5, 8.

Accordingly, IT IS ORDERED that CRC's motion for summary judgment is GRANTED, and Shore's claims against CRC are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of April, 2015.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE